IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:20cr-00025 KGB |
| | ) | |
| JOE DAVID MAY | ) | |
| | ) | |
| Defendant | ) | |

---

## DEFENDANT JOE DAVID MAY'S OMNIBUS MOTION IN LIMINE

---

# TABLE OF CONTENTS

Introduction and Background Facts ........................................................4

Argument

    I.    Inadmissible Hearsay ..............................................................5

    II.   Evidence Regarding Requirements of
       Law and Other Regulatory Violations ...................................6

           A. Regulatory and administrative
              are irrelevant ........................................................7

           B. Even if relevant, the probative
              value of any violation is substantially
              outweighed by unfair prejudice and
              confusion to the jury ............................................7

           C. Evidence of such violations
              constitutes improper character
              evidence ...............................................................8

    III.  Mischaracterization of Permissible
       Conduct As Criminal ............................................................9

           A. Formulating, marketing and
              producing compound medications
              is not illegal ........................................................10

           B. Billing for compound medications
               is not illegal ........................................................11

           C. Preprinted prescription pads
              are not illegal ......................................................13

           D. Effectiveness of compound
              Medication ..........................................................13

IV.     Opinion Testimony Regarding
        Dr. May's Intent or Knowledge ……………………………………..14

V.      Guilt Assuming Hypotheticals …………………………………15

VI.     Bolstering and Plea Agreements' Guarantees
        For Truthfulness …………………………………………16

VII.    Unavailable Co-Conspirator Statements …………………………18

VIII.   Labeling Witnesses "Co-Conspirators" ……………………………19

IX.     Terms "Kickback" and "Fraud"
        Should Be Prohibited ……………………………………………20

X.      Victimizing the Jury ……………………………………………23

XI.     Conclusion ……………………………………………………..23

## Brief Introduction and Background[1]

On September 11, 2020, a grand jury indicted Dr. Joe David May ("Dr. May") for crimes related to an alleged healthcare fraud scheme[2]. According to the government, Dr. May and numerous named and unnamed coconspirators were involved in a massive kickback scheme from January 2015 through July 2018 to defraud TRICARE by generating fraudulent and medically unnecessary prescriptions for compound drugs.  Specifically, the government alleges that in 2015 Albert Glenn Hudson paid Derek Clifton, Keith Benson, Angie Johnson ("recruiters"), and others to find retired and active-duty military members with TRICARE insurance and market certain prescription compound medications to them. The "recruiters" were paid a twenty percent commission of whatever Tricare reimbursed for each authorized prescription. These "recruiters" would then pay medical professionals "kickbacks" in exchange for signing pre-printed prescriptions sheets for the compound drugs.

---

[1] For simplicity purposes, Dr. May is outlining the government's general allegations related to the alleged scheme as they are presented in the Superseding Indictment. Dr. May does not agree with, nor does he adopt the government allegations. Therefore, no statement in the Brief Introduction and Background section should be construed or interpreted as an admission of fact by Dr. May.

[2] Specifically, Dr. May has been charged with conspiracy to commit fraud, multiple counts of mail and wire fraud, violating the Anti-Kickback Statute, multiple counts of obstruction of justice, aggravated identity theft and giving a false statement to the FBI.

At some point in late 2015, the FBI started an investigation into the TRICARE's coverage and reimbursement for compound drugs. In January 2016, Dr. May met with the FBI to discuss his role in authorizing prescriptions for compound drugs. During this interview, he made several statements that the government contends were false, including that he would sometimes speak with patients in person or over the phone prior to authorizing the prescriptions.

The purpose of this motion is for the Court to determine 1) if the material or evidence in question will be admissible during trial, and 2) if the mere offer, reference, or statement made during trial about any of the issues listed below will tend to unfairly prejudice Dr. May, thus ringing the proverbial bell, that cannot be un-rung.

<u>Argument</u>

I.    <u>Any Evidence that Implicates Dr. May in Criminal Activity Through Inadmissible Hearsay Should be Excluded</u>

While Dr. May trusts the government is aware of the rules of evidence and intends to follow them in good faith, out of an abundance of caution, he respectfully requests this Court instruct the government and its witnesses from introducing hearsay evidence. Specifically, Dr. May is referring to government questioning of law enforcement and others which is intended to introduce out-of-court statements from informants or cooperators that

implicate him in criminal activity, thus violating his constitutional right to confrontation under the Sixth Amendment.

Statements which would ordinarily be considered hearsay may be admitted if they are not offered for the truth of the matter asserted, but to provide "reasons for or propriety of a police investigation." *United States v. Malik*, 345 F.3d 999, 1001 (8th Cir. 2003). However, when the propriety of the investigation is not a relevant issue, admission of statements for this purpose is improper. *United States v. Two Elk*, 536 F.3d 890, 902 (8th Cir. 2008). Here, the propriety of the investigation is not at issue. Therefore, the government should be prohibited from circumnavigating the hearsay prohibition in this manner as it would violate Dr. May's constitutional rights under the Confrontation Clause.

II.   <u>Any Evidence Regarding Purported Regulatory or Administrative Violations Should Be Excluded</u>

It is anticipated the government will attempt to elicit testimony that Dr. May may have violated regulatory or administrative procedures, including but not limited to, provisions of the Arkansas Medical Practices Act and Baptist Health Policies and Procedures. Even if true, this evidence is irrelevant, prejudicial, confusing, and misleading. Moreover, it also constitutes improper character evidence.

A.     Regulatory and administrative violations are irrelevant.

Relevant evidence is that which tends to make a fact more or less probable than it would be without the evidence. However, the fact in question must be of consequence in determining the action. FED. R. EVID. 401. The material facts of consequence here are whether Dr. May conspired to commit fraud, committed fraud, violated the Anti-Kickback Statute, made a false statement to the FBI, obstructed justice, and engaged in aggravated identity theft. That he may have violated the Arkansas Medical Practices Act or Baptist Health regulations are inconsequential as to whether he committed the crimes charged in the Superseding Indictment.

B.     Even if determined to be relevant, the probative value of any regulatory or administrative violations is substantially outweighed by its danger of unfair prejudice and confusion to the jury.

Even if this Court were to find evidence of this nature is relevant, its probative value is substantially outweighed by the danger that it is unfairly prejudicial, confusing, and misleading to the jury. The probative value of such evidence, if any, is minimal, and the government may not bootstrap a civil regulatory violation into a criminal offense. *See United States v. Christo*, 614 F.2d 486, 492 (5th Cir. 1980). Among other issues, administrative and regulatory violations often have different burdens of proof and intent requirements – particularly when compared to specific-intent offenses such

as wire and mail fraud. *See e.g.*, *United States v. Casperson*, 773 F.2d 216, 223 (8th Cir. 1985) (mail and wire fraud are specific intent crimes). Indeed, in *Christo*, the Fifth Circuit found that violations of a civil regulatory banking statute were "legally irrelevant" to whether the defendant misapplied bank funds with the intent to defraud the bank. *Christo*, 614 F.2d at 492.

Additionally, allowing this type of evidence risks unfairly prejudicing Dr. May as well as confusing and misleading the jury by allowing them to improperly focus on civil regulations or hospital policies and procedures rather than elements of the crimes charged. Thus, there is substantial risk the jury may convict based on an improper standard of proof, or because it believes Dr. May failed to comply with civil or administrative rules. *See United States v. Riddle*, 103 F.3d 423, 431 (5th Cir. 1997) (finding that banking examination reports disclosing regulatory violations impermissibly presented "danger of prejudicing, confusing, or misleading the jury" because it allowed the jury to equate poor banking practices with criminal intent).

> C.   Evidence of purported regulatory or administrative violations is improper character evidence.

Finally, any evidence of purported administrative or regulatory violations should be excluded as inadmissible character evidence. Rule 404(a) of the Federal Rules of Evidence prohibits the introduction of a person's character to prove he acted in a certain way on a particular occasion. Evidence of other

wrong acts is also inadmissible to prove a person acted in a particular manner on a particular occasion. FED. R. EVID. 404(b). While there are some permitted uses for this type of propensity evidence, the government has not articulated an exception to the rule and Dr. May asserts there is none. Therefore, the government should be prohibited from presenting evidence or eliciting testimony that Dr. May may have violated administrative or regulatory provisions, or at the very least, the government should be required to proffer the testimony or other evidence outside the presence of the jury for this Court to determine its admissibility as well as the potential for unfair prejudice and confusion to the jury.

III.   The Government Should be Precluded from Mischaracterizing Permissible Conduct as Criminal

This Court should preclude the government and its witnesses from characterizing evidence about legal and beneficial practices that are common and accepted in the health care and pharmaceutical industries as evidence of criminal conduct or imply that they are evidence of criminal intent. There are numerous instances in the Superseding Indictment where the government utilizes lawful practices as evidence of criminal conduct and as evidence that Dr. May agreed to a criminal conspiracy. It has characterized these lawful practices as nefarious or unlawful in nature, and this Court should preclude them from making such misleading, irrelevant, and prejudicial assertions as

they are wrong as a matter of law, not relevant to the case, and unduly prejudicial to Dr. May.

> A. Formulating, producing, and marketing compounded medication are not illegal.

It is the responsibility of healthcare providers and drug manufacturers to identify and promote medications that are beneficial to patients and that provide improved quality of patient care. Prescriptions for compound medications cannot be treated any differently than other prescriptions. In fact, compound medications have been found to have numerous medical benefits for patients, including the fact that they are not addictive. Andrea Branvold and Maria Carvalho, *Pain Management Therapy: The Benefits of Compounded Transdermal Pain Medication*, 2 J. GEN. PRACTICE 188 (2014). Because of this important fact, the government itself in 2015 marketed and promoted the use of compound medications through federal healthcare programs such as TRICARE[3]. The government cannot now claim that the identification and promotion of these alternative medications, the same drugs the government identified and promoted to veterans as an alternative to highly addictive drugs, is now illegal.

---

[3] *See* https://web.archive.org/web/20150314193119/http://www.tricare.mil:80/CompoundDrugs (last accessed May 12, 2022); VA/DoD Clinical Practice Guideline for Opioid Therapy for Chronic Pain

B.      Billing for compounded medication is not illegal.

The government also alleges that Dr. May, or others on his behalf, submitted claims for compound medications to TRICARE, which would reimburse at a particularly high rate. There is nothing illegal about submitting a prescription claim for compound medication to a federal healthcare program, such as TRICARE. The government's insinuation that the high reimbursement rate can somehow be attributed to Dr. May is inaccurate and extremely prejudicial[4].

Medical providers have absolutely no control over reimbursement rates of prescription medications set by manufacturers and agreed upon by government healthcare programs. TRICARE and Express Scripts, the programs that offer pharmacy and medical benefits to active-duty and retired military personnel and their dependents agreed to the reimbursement rates set by the ingredient manufacturers for the compound medications. Physicians did not have any input into the reimbursement rates, nor do they ordinarily know specific reimbursement rates.

Ironically, it appears that TRICARE did not follow its own regulations when setting reimbursement rates for compound medications. The United States Government Accountability Office ("GAO") reported to Congress in

---

[4] This is especially so given the government's motion in limine seeking to preclude Dr. May from arguing what it calls "Improper Defenses." See Doc. 189, pp. 13-21.

October 2014 that TRICARE'S payment practices for certain compound drugs provided through its pharmacy and medical benefit plans are inconsistent with regulations and are typically more generous than those of Medicare and the Department of Veteran's Affairs.[5] For example, Medicare did not allow for per ingredient adjusted whole price billing[6]. Furthermore, the report found that while compound drugs represent a small share of TRICARE's overall drug costs, its costs for these drugs have risen significantly in recent years and the practice of paying for bulk drug substances is inconsistent with its regulations, which results in added costs to the program.[7]  Quite simply, if the government did not like the high reimbursement rates, the government should have followed its own regulations and set reimbursement rates commensurate with the Medicare rates. While Dr. May has no intention of "blaming the victim," it is patently unfair for the government to lay its own mistakes and policy violations at the feet of Dr. May by presenting evidence of the high reimbursement rates for compound drugs and arguing or implying this was somehow illegal or improper.

---

[5] Government Accountability Office. (2014) *Compounded Drugs: TRICARE's Payment Practices Should Be More Consistent with Regulations.* (GAO Publication No. 15-64).

[6] Id. at pp 22-23.

[7] Id. at p. 27.

C.    Preprinted prescription pads are not illegal.

The Superseding Indictment insinuates that the use of pre-printed prescription pads is illegal. Neither Arkansas pharmacy regulations nor the Arkansas Medical Board prohibit or disallow the use of pre-printed prescription forms; therefore, the government should be prohibited from arguing or implying as such.

D.    The government should be precluded from arguing about the effectiveness of compound medications.

The government questions the medical necessity of the compound medications, but there is no evidence suggesting that compound medications have no medical benefit to patients. Compound medications were promoted by government healthcare programs starting in 2013 in response to the national epidemic of patient abuse of opioid pain pills. Physicians responded to the national crisis by writing prescriptions for alternative non-narcotic and non-addictive treatments, such as compound drugs. There is no dispute in the medical community that compound medications can have significant benefits, especially to those who are experiencing immense pain but are susceptible to the issues of addiction, such as the large number of patients define our military population. See Andrea Branvold and Maria Carvalho, *Pain Management Therapy: The Benefits of Compounded Transdermal Pain Medication*, 2 J. GEN. PRACTICE 188 (2014). The medical research shows that

compound medications can be extremely effective for patients, and government health care programs, through their billing practices, support this.

Dr. May does not intend to argue that because some patients found the prescription creams to be beneficial this is proof there was no fraud. However, the government should not be allowed to argue or imply to the jury that in general compound medications are ineffective, medical unnecessary and without medical value, because that is simply not true.

IV.   <u>The Government Should Be Prohibited from Eliciting Opinion Testimony Regarding Dr. May's Intent or Knowledge</u>

Witnesses should not be permitted to give their opinion as to whether Dr. May had any specific intent or state of mind as to the charged offenses in the Superseding Indictment. Rule 701 of the Federal Rules of Evidence permits lay opinion testimony if (1) it is rationally based on the witness's perception; and (2) helpful to understanding his testimony or determining a fact in issue. The requirement that the opinion must be "rationally based on the witness's perception" eliminates opinions based on hearsay, speculation, and irrational reasoning. Implicit in this requirement is that courts may require a lay witness to disclose the basis for his or her opinion so it can determine whether it is rationally based on the facts.

"[T]he helpfulness requirement is principally designed to provide assurance against the admission of opinions which would merely tell the jury what result to reach." *United States v. Kaplan*, 490 F.3d 110, 118 (2nd Cir. 2007) (internal citations omitted). "[T]estimony regarding culpability is a form of lay opinion that will rarely, if ever, meet the requirement …." *United States. V. Rodriquez-Adorno*, 695 F.3d 32, 38 (1st Cir. 2012); *see also United States v. Ruppel*, 666 F.2d 261, 270 (5th Cir. 1982) ("The admission of opinion testimony about a defendant's state of mind is highly prejudicial and must be avoided."). Therefore, this Court should instruct the government and its witnesses to refrain from providing opinion testimony regarding Dr. May's intent, knowledge, or state of mind as to the crimes charged.

V. <u>The Government Should be Precluded from Offering Guilt Assuming Hypotheticals</u>

The government should not be allowed to cross-examine character witnesses using hypothetical questions which assume Dr. May's guilt. *See United States v. Pirani*, 406 F.3d 543, 554 (8th Cir. 2005) (holding that it was improper "to ask … guilt-assuming questions" of the defendant's character witness, "particularly one which assumed he was guilty of the charged offenses," but that this did not constitute plain error.). This line of cross-examination is improper because it destroys the presumption of innocence, and the government should be prohibited from doing so.

VI.     The Government Should Not be Allowed to Bolster a Witness's
         Testimony by Implying Plea Agreements Guarantee a Cooperating
         Witness's Testimony is Truthful

The government should not be permitted to engage in prejudicial witness

bolstering by implying its plea agreements with or grants of immunity to

government witnesses ensures the witnesses' truthfulness in testifying or put

the prestige of the government or this Court behind the veracity of its

witnesses. This is improper vouching for the credibility of its witnesses. To be

clear, Dr. May is not arguing that a "testify truthfully" plea bargain clause

constitutes improper vouching or bolstering, or that it would be improper for

the government to explain its decision to grant immunity to a particular

witness. *See United States v. Segal*, 649 F.2d 599, 604 (8th Cir. 1981)

(holding that arguing the decision to grant immunity did not amount to a

personal assurance of the witness's veracity or bolster her credibility by

matters outside the record). It is going further than this to which Dr. May

objects. For example, in *United States v. Carroll*, 26 F.3d 1380, 1387-89 (6th

Cir. 1994), the Court held:

> In the present case, the prosecutor blatantly implied
> that the [witnesses]'s plea agreements ensured that
> the witnesses were truthful; the prosecutor did not
> give the jury any inkling that the government has no
> independent means of discerning truthfulness.
> Further, the prosecutor placed the prestige of the
> government, and even the court, behind the
> credibility of the [witness], by stating that, if the
> government or the judge did not believe that the

witnesses were being truthful, the witnesses would
be in jeopardy. This implied to the jury that the
government and the court were satisfied that the
witnesses were truthful. This constitutes improper
vouching.

*See also, United States v. Arroyo-Angulo*, 580 F.2d 1337, 1149-50 (2nd Cir.

1978) (Friendly, J., concurring), *cert. denied*, 439 U.S. 913 (1978), where

Judge Friendly pointed out in finding that the prosecutor's statements

suggested that plea agreements imply truthfulness on the part of government

witnesses:

> Such remarks are prosecutorial overkill. They
> inevitably give jurors the impression that the
> prosecutor is carefully monitoring the testimony of
> the cooperating witness to make sure that the latter
> is not stretching the facts something the prosecutor
> usually is quite unable to do ….
>
> …
>
> If proper objection had been made to the summation,
> the judge should have sustained it; if matters had
> gone too far to make a striking of the remarks an
> effective cure, the judge should have instructed that
> the promise in the cooperation agreement adds little
> to the truth-telling obligation imposed by the oath;
> that the prosecutor often has no way of knowing
> whether the witness is telling the truth or not; that
> the books are not filled with perjury indictments of
> Government witnesses who have gone beyond the
> facts; and that an acquittal would not mean that as a
> matter of course the Government would seek such an
> indictment or even fail to make its promised
> recommendation of leniency. If prosecutors knew that
> such instructions will be given, they will hardly be
> tempted to the excesses committed here.

*Arroyo-Angulo*, 580 F.2d at 1150 (Friendly, J., concurring).

Thus, Dr. May requests this Court prohibit the government from engaging in improper bolstering or vouching.

VII.    Unavailable Co-Conspirator Statements

The Superseding Indictment alleges Dr. May conspired with Glenn Hudson, Derek Clifton, Kenneth Myers, Donna Crowder, Jennifer Crowder, Keith Benson, and "others known and unknown." Dr. May requests this Court order the government to approach the bench and request a hearing outside the presence of the jury to determine the admissibility of testimony regarding any alleged co-conspirators who are unavailable to testify at trial. While such testimony may be admissible as an exception to the hearsay rule, the government bears the burden of proving that such exception exists. Accordingly, Dr. May requests that before the government is allowed to present such evidence, it be required to prove by a preponderance of the evidence that (1) a conspiracy existed between Dr. May and the unavailable witness, and (2) the statement offered was made in the course of and in furtherance of the conspiracy. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987). "The statement must be considered but does not by itself establish … the existence of the conspiracy or participation in it under [the rule]." FED. R. EVID. 802(d)(2)(E). In other words, admission of the statement

must be based on more than just the statement itself. *See United States v. Mayfield*, 909 F.3d 956, 960 (8th Cir. 2018) (government must present evidence outside the statement itself to prove the conspiracy).

Additionally, Dr. May requests that he be informed of the identity of the alleged co-conspirator and the specific statement sought to be introduced before any such testimony is elicited so he may properly prepare for any necessary objection.

VIII.   <u>The Government Should be Prohibited from Referring to Dr. May and Other Witnesses as "Co-Conspirators"</u>

Dr. May anticipates the government will be tempted to label witnesses and other individuals as unindicted co-conspirators prior to a formal ruling by this Court. Labeling or classifying a witness as a co-conspirator carries substantial weight, particularly in a conspiracy case, as jurors are likely to conclude the purported unindicted co-conspirator's testimony is more reliable than a fact witness or an agent due to their perceived, intimate knowledge of the details of the case. Such improper use of the term "co-conspirator" will confuse and mislead the jury as well as prejudice Dr. May. *See United States v. Espino*, 32 F.3d 253, 257-58 (7th Cir. 1994) (noting that "conspiracy" is a legal term of art and asking the defendant if he was part of a conspiracy called for an impermissible legal conclusion). Moreover, the government may be motivated to categorize witnesses as co-conspirators because of the

inherent hearsay exception. Therefore, until the government has sufficiently established the proper predicate for admissibility under Federal Rule of Evidence 801(d)(2)(E), this Court should preclude the government and its witnesses from labeling, discussing, or alluding to any person as a "co-conspirator" or an "unindicted co-conspirator."

IX.     The Government Should Be Precluded from Eliciting Reference to the Terms "Kickback" or "Fraud"

The Superseding Indictment alleges that Dr. May and others intended to defraud federal health insurance programs and to pay and receive "kickbacks" in violation of 42 U.S.C. § 1320a-7b(b) and other statutes. The meaning of "fraud" and "kickback" in this context are specialized, legal terms of art which will require this Court to instruct the jury on their legal definition at the conclusion of the trial.

The government's pretrial remarks and disclosures make clear its intention to pepper fact and expert witness testimony and questioning with these legal terms as often as possible – as if labeling a marketing commission a "kickback" automatically makes it so. For example, in his expert disclosure, proposed government non-legal expert Donald Wunderlin makes repeated references to the term "kickback." See Doc. 158-1 at 2. This type of testimony and language is improper legal opinion masquerading as fact and will only

serve to confuse and mislead the jury as to the actual legal elements the government is required to prove beyond a reasonable doubt.

The federal Anti-Kickback Statute ("AKS") does not prohibit all renumeration, but only "illegal" renumeration as defined by law. *See e.g. United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 29-30 (1st Cir. 1989) (noting that the threshold element in any kickback-based liability is that some "illegal renumeration" be offered or received to induce a purchase) (citing to 42 U.S.C. § 1320(a)97b(b)). The AKS also includes statutory and regulatory safe harbors that explicitly permit certain payment arrangements such as incentive-based compensation to employees or fair market value transactions with third parties. *See United States v. Shaw*, 106 F. Supp. 2d 103, 108-13 (D. Mass. 2000) (outlining that the anti-kickback statute establishes an intent-based criminal prohibition with optional statutory and regulatory 'safe harbors' that do not purport to define the full range of lawful activity. Rather, the safe harbors provide a means of assuring that payment practices are not illegal.). It is anticipated that the government will attempt to claim the written marketing agreements, which compensated individuals the government refers to as "recruiters," with percentages of revenue, as kickbacks. Whether these forms of compensation amount to an illegal "kickback" under the AKS carries a distinct legal meaning, separate and apart from the colloquial meaning of the term, and it

is precisely in these circumstances that courts exclude reference to such terms by fact and expert witnesses. *See e.g., United States v. BlueWave Healthcare Consultants, Inc.*, No. 9:14-CV-00230, 2017 WL 11673304, at *1 (D.S.C. Nov. 8, 2017) (allowing the term "kickback" to be used is an "impermissible legal conclusion … similar to a bystander's testimony that an event 'looked like murder.'")

Similarly, in *United States v. Cooper*, the trial court precluded the government's expert witness in a healthcare fraud case from using the term "fraud" to describe the defendants' conduct. Several government experts had intended to offer testimony such as "billing separately for a battery charger is fraud" and "billing Medicare prior to delivery is fraud." *Cooper*, 286 F.Supp. 2d 1283, 1295 (D.Kan. 2003). The trial court excluded this testimony and the use of the term "fraud" because "[t]he term, 'fraud' is a legally specialized term which tracks the statutory and common-law language of the intent elements of the offenses with which the defendants are charged. When an expert witness opines that a defendant's activity is fraudulent, the witness expressly draws the conclusion or inference that the defendant acted with the intent to defraud." *Id.* Further, this type of testimony "if believed, … would necessarily dictate the conclusion that the defendant acted with the intent to defraud." *Id.* This "intrusion into the province of the jury is precisely the sort

of testimony Rule 704(b) is designed to prevent." *Id.* (citing *United States v. Wood*, 207 F.3d 1222, 1236 (10th Cir. 2000)).

Like the defendants in *BlueWave* and *Cooper*, the jury will be asked to determine if Dr. May committed "fraud" and received "kickbacks." The prejudice here is the same as it was in *BlueWave* and *Cooper*. Therefore, this Court should bar the government from referring to in its questioning or eliciting witness testimony as to specialized legal terms like "fraud" and "kickback."

X.  <u>The Government Should Be Prohibited from Victimizing the Jury</u>

Juror impartiality is an essential component Dr. May's fundamental right to trial by jury. A juror must be "impartial and indifferent." *Morgan v. Illinois*, 504 U.S. 719, 727 (1992). This essential attribute of the right to a trial by jury can be undermined by remarks and even veiled suggestions that a juror's interest is compromised by the alleged offense conduct. Therefore, matters with the clear potential to compromise jury impartiality must be acknowledge and addressed.

It is improper for the government to "sugges[t] [that] the jurors were themselves victims of [a defendant's] crimes," and "remarks invoking the individual pecuniary interests of jurors as taxpayers are universally viewed as improper. *United States v. Palma*, 473 F.3d 899, 902 (8th Cir. 2007). *See also United States v. Smyth*, 556 F.2d 1179, 1185 (5th Cir. 1977) ("the

prosecutor's pitch [to the jury regarding its 'tax money' and letting 'Uncle Same take the ride' constituted] an unprofessional and highly improper appeal to the passion and prejudices of the juror.") (internal citations omitted).

TRICARE is a taxpayer funded program. The risk of improper appeals to the jury and juror victimization are especially acute in this case. The discovery provided, as well as the Superseding Indictment, focus heavily on the alleged monetary loss to the government from TRICARE claims, even though proof of loss is not an element of any of the offenses charged. This invites juror victimization and precisely the sort of appeal to partiality which the law condemns as improper.

Testimony and comments which suggest "we are all" victims of this crime clearly compromise the independence of the jury. While a motion in limine is appropriate so the subject may be addressed prior to trial, to be clear, should any such remarks be made during trial, including during opening statement and closing arguments by the government, Dr. May will seek a mistrial. Therefore, this Court should instruct the government to refrain from making such arguments.

XI.     <u>Conclusion</u>

For the reasons stated above, Dr. May respectfully requests this Court

grant his motion in limine in accordance with his stated positions as well as

provide any and all other just and proper relief to which he may be entitled.

Respectfully submitted,

SHELLY HOGAN KOEHLER
Arkansas Bar No.: 2007275
*Attorney for Defendant Joe David May*

Snively, Fairrell & Koehler Law Firm
129 West Sunbridge Drive
Fayetteville, AR 72703
Tel:   (479) 695-2444
E-mail: Shelly.H.Koehler@gmail.com